on behalf of Mr. Ibarra. As we indicated in the opening brief, Mr. Ibarra was denied several fundamental rights during his trial. Most importantly, he was denied the right to effective assistance of counsel. As the people indicated, normally such a claim might be better off raised if it is raised in a 2255. Kennedy, why don't you try speaking into that? Ibarra Most of the time, as the people have indicated, or the government. Kennedy Is that on? Ibarra Is that working? Kennedy Yes, Your Honor. Ibarra Okay. Ibarra Okay. How's that? Kennedy Go ahead. Ibarra Most of the time, as the government indicates, the best way to litigate a claim of ineffective assistance of counsel would be by way of a 2254 or a 2255 petition. In this case, it would be a 2255 petition. However, in this particular case, trial counsel's deficiency was so extraordinary and so clear. He knew the confession of Mr. Ibarra was critical to whether or not the government could prove its case. Mr. Ibarra admitted to participating in the drug transaction, admitted to knowledge of the drugs. That was critical to the government obtaining a conviction. The defense counsel brought a motion, and it was, to say the least, frivolous, to try to suppress the confession based upon this awkward analogy to Missouri v. Siebert, where the U.S. Supreme Court condemned the practice of officers questioning first and mirandizing later. And trial counsel was tempted to argue, well, the first confession wasn't recorded, and the second one was. I don't see the analogy there. What happened, and what trial counsel knew, and that's why I don't believe the 2255 is the way to go, I think this Court has enough to make the decision it needs to make, is because trial counsel, on cross-examination after the evidentiary hearing on the motion to suppress Mr. Ibarra's confession, acknowledged to the officer, the officer acknowledged that he threatened Mr. Ibarra with 25 years to life in prison if he did not get down and cooperate. United States v. Harrison was even less serious in that case, and this Court found the confession to be coerced, involuntary. In U.S. v. Harrison, the agent threatened... Well, let's look at the statement, because I'm looking at the record. The agent said that it was a failure to investigate. I believe in U.S. v. Harrison, telling the accused that she was looking at 20 years in prison was probably an accurate statement as well, but threatening the accused with imprisonment when it could be negotiated with the government, it could go to the charges, it could go to whether or not an attorney was present, threatening them to open up and to confess. And obviously, as soon as Mr. Ibarra was told he was looking at 25 years to life, he just basically broke down and opened up. It was a great tactic. I want to understand this. Your position is you think Harrison stands for the proposition that a police officer accurately telling somebody what the potential sentence they're facing is automatically renders a confession involuntary? I don't say automatically. I don't like that word when I'm in this Court. But I do think the Court needs to take into consideration the fact that in U.S. v. Harrison, the defendant was told her fingerprint might be on a drug package. She was looking, and there was incriminating evidence about money laundering, and she was looking at 20 years' imprisonment, which is probably appropriate under the United States Code. However, she could negotiate, she could bargain, she could have gotten substantially less time. The officer is in no position to tell an accused that they're looking at what they're looking at in terms of imprisonment in order to induce them to open up and to confess. That is not their purview. It is misconduct. It renders a confession. That's the job of the U.S. attorney. Correct, Your Honor. Yeah. It's not a U.S. agent, such as Agent Mora, when he advised or misadvised Mr. Vibera. He was looking at 25 years to life imprisonment. And it was effective, just as rubber hoses are effective, just as the thing that they do to those people in Guantanamo Bay when they put water in their noses and try to suffocate them. It is effective because what does it do? It gets them to open up and it gets them to confess. I don't know a thing about Guantanamo Bay. When an officer is using inducements and using threats of prolonged incarceration so as to overcome a subject's free will, that renders the confession involuntary. I believe in this case there was sufficient evidence that Detective or, excuse me, Agent Mora used such tactics so as to overcome Mr. Vibera's free will. I acknowledge, though, trial counsel did not raise this issue. Now, it wasn't like new evidence or something he didn't know about because as the excerpts of the record in the reporter's transcript on appeal clearly reveal, it was trial counsel himself that elicited from Agent Mora on cross-examination that he threatened Mr. Vibera with 25 years to life imprisonment if he did not cooperate. And what happened? He melted and he did cooperate and he opened up. And I believe based on that, you can't say trial counsel didn't know it or trial counsel had a reason not to suppress because trial counsel did file a motion to suppress. He acknowledged or conceded by filing this motion under Missouri v. Siebert that the confession had problems. Can I stop you for a second? I've been looking at U.S. v. Harrison and all I see in Harrison is a holding by this court that an officer can't say to somebody, if you remain silent, I'll let the court know that and that will go against you. I don't find anything in Harrison that says that it is coercive to tell somebody what the sentence is. What the court is saying in that case, the court says in that case is that he first tells him what the sentence is and then says, and if you keep silent, this will go against you. And it's that that the court comes down on. Do you agree? I agree that the court indicated and I agree it's also the threat of 20 years' imprisonment that would overcome a subject's free will. There are cases that stay in my brief that threatening a subject with prolonged incarceration is significant and it will overcome a subject's free will. And that's exactly what Agent Mora did with Mr. Ibarra. He threatened him with 25 years to life imprisonment if he did not cooperate, if he did not open up, if he did not confess. You want to save a couple minutes? I do, Your Honor. Okay. Your Honor, I'll wait on the other issue when I get back. All right. May it please support, Your Honors, Joe McNally on behalf of the United States. Let me just start and talk a little bit about the IEC claim. Obviously, this is something that could be resolved in the district court, but to the extent that counsel wants to pursue it here, there's no basis for a conclusion that there was IEC because there was no claim of any merit to be raised. This court held in Batista-Villa for 20 years now that there is nothing improper for constitutional purposes with advising a defendant of the potential penalties, and that's exactly what was done here. The court reaffirmed- Could I find the FBI agent or the officer making such an advice? I'm sorry, Your Honor. All right. So that case that you just, what was the name of it, Batista? It's Batista-Villa. The court there held that it was okay for a police officer or an FBI agent to make that advice? Correct. To offer that advice? Correct. It said, you know, And it goes on to talk about other courts, and they're holding that recitation of potential sentence the defendant might receive does not render a statement involuntary. We agree. And this court adopts that position. Also see ORSA, which is cited in the brief, and that's a case where a postal inspector  same position that those statements, though obtained in violation of Miranda, are not rendered involuntary by the fact that the penalty provision is recited. And so this is a well-settled area of the law, and, you know, if we're going to accuse somebody of being ineffective, there better be grounds for it. And, you know, there's no, the reason this claim wasn't made and the reason it wasn't pursued in the district court is because there's no merit. It's been settled for 20 years. If you look at counsel's What you want us to do is just not address it at all. Correct? Well, I actually, I think there's a couple of things we can do. That's what your brief says. Our brief does say that. That's our basic practice. And I think that's the court's practice. But I'll also play this out, I think, as a practical matter, which is the defendant's going to go back to Judge Carter and ask for a hearing on essentially a meritless claim. The law is well settled. And we're going to be back, you know, essentially using circuit research. What are you so excited about this morning? Apparently just being here, Your Honor. Oh, yeah. You want a cup of coffee or? I probably should have one or two more. Okay. So we could go. If you're there and you arrest someone and you say, well, you've got a big problem here. You're looking at 25 years to life. Can I give you a nice cool glass of water to calm you down? I mean, that's kind of coercive. Well, I. You don't think so? Well. If you think about it. Sure. Yeah. I think a couple of things, Judge. There are all types of inducements that law enforcement does. But, you know, we let we let we let those things just sort of slide by because we've courts have in the past. Miranda came down the same month that I became a was appointed to the L.A. Municipal Court. Nineteen sixty five. And it was it's been eroded ever since. So now Miranda really doesn't mean much. Very little value to it. It's true. So. You don't have to give them their Miranda rights. I mean, you should. But if you don't, they talk to you and they say things that maybe are incriminating. Then you can always take this stand. You can always impeach him. So. They're not going to get on the witness stand. You don't get on the witness stand, testify. You're almost dead on arrival because the jury is thinking, well, testifying must be something he's hiding. So we've really turned Miranda into a joke. And, you know, Miranda is a good law enforcement tool if it's used properly. And if I may, I would note that the officer actually here did Mirandize the defendant prior to any questioning. He waived those rights. And in fact, we had a hearing in front of front of Judge Carter on it. Yeah. Yeah. OK. I'm just talking generally. All right. Is your pulse rate going down? Just just a little bit. I had that cool glass of water, I think. Another issue. Do you want to address the other? Sure. I think the other issue is a well also equally well settled issue before the court here. You know, the statutory minimum sentence ended up being 20 years because this particular defendant has a prior drug distribution conviction for distributing kilo quantities of of narcotics and the statutory maximum was life. Once the jury found, as it did, the quantity of over 500 grams of methamphetamine, the court was free to sentence anywhere within the 20 year to life stat max. And that's exactly what Judge Carter did. Well, he relied on the lesser percent. Experts said that the meth was 99 percent and fewer. But Judge Carter relied on the lower 95 percent purity from the pre-sentence report. That's that's correct. It didn't make any difference anyway. No, it wouldn't make a difference. Once he was over 50 grams of actual methamphetamine, it would have triggered the same offense level, I believe. All right. Unless the court has other questions for the government, we're prepared to submit. I think the only other question I don't know that I ever answered Judge Hurwitz question. We did, as is our practice, ask the court to, you know, essentially not evaluate this claim. But I would say that, you know, to the extent that the court, you know, finds this to be meritless and that the law is well settled on this, it may ultimately save everybody, this court and Judge Carter and, frankly, defense counsel resources if I think it makes that clear in the opinion. So it'll make a lot more work for this court if we start taking up in the first instance IAC claims. Fair enough. Thank you for your time. You know, if we do that, what happens to our full employment? All right. This all becomes part of the gross national product, you know, of the United States. It does, Your Honor. Yeah. One of the things, just briefly, Your Honors, with regard to the cite that I received yesterday, I received it from the e-filing. The United States has recently cited the court to the United States v. Vallejos. And in that supplemental brief that they filed, I don't believe that Vallejos is of any assistance to the government, because in Vallejos that involved the distribution of child pornography and an upward adjustment under the U.S. guidelines for distribution of the pornography based upon a file-sharing system. And I believe based on that, in this case, we're challenging the judicial reliance upon not only the quantity but the quality of the methamphetamine, where there was a finding that it was over 90 percent pure in imposing the sentence. In this case, the defendant, or excuse me, Mr. Ibarra, could have received a 20-year mandatory minimum. Judge Carter imposed 262 months and did start discussing the quality of the methamphetamine in addition to the quantity. And I believe based on that, it was an improper use of a fact not found by the jury beyond a reasonable doubt in accord with Apprendi v. New Jersey and United States v. Booker. So based on that, not only should the conviction be reversed, but the sentence as well. And unless the Court has any questions, I'd be prepared to submit. All right. Thank you. Thank you, Your Honor. Thank you.
judges: Pregerson, Paez, Hurwitz